**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| INEOS AMERICAS LLC and<br>INEOS OXIDE LIMITED<br><br>          Plaintiffs,<br><br>    v.<br><br>DOW CHEMICAL COMPANY<br><br>         Defendant. | No. 1:20-cv-01385-NRB |

## [PROPOSED] ELECTRONICALLY STORED INFORMATION PROTOCOL

This protocol (the "ESI Protocol") governs the search, processing, and production of Electronically Stored Information ("ESI") and Hard-Copy Documents by Plaintiffs INEOS Americas LLC and INEOS Oxide Limited (collectively, "INEOS") and Defendant Dow Chemical Company ("Dow") (collectively, the "Parties") during the pendency of this litigation.

The Parties preserve their attorney-client and attorney work-product privileges and any other applicable privileges and immunities. This ESI Protocol, and the production of documents pursuant to this ESI Protocol, should not be construed to in any way waive or weaken these privileges. Any such waiver shall be strictly and narrowly construed and shall not extend to other matters or information. The Parties do not waive any objections to the discoverability, admissibility, or confidentiality of documents or ESI.

Documents produced hereunder are fully protected and covered by any protective order entered by this Court and orders of the Court effectuating same. Nothing in this ESI Protocol shall be interpreted to supersede the provisions of any protective order governing confidentiality

and/or privilege entered by the Court in this litigation unless expressly provided for in such an order.

The Parties shall comply with this ESI Protocol to the extent reasonably feasible. If there are provisions for which compliance would not be reasonably feasible, the Producing Party shall notify the other party of such provisions and the Parties will meet and confer in good faith on reasonably feasible alternatives.

## 1. DEFINITIONS

1.1. "Requesting Party" means and refers to the Party that serves a request for the production of Documents.

1.2. "Producing Party" means and refers to the Party upon whom a request for the production of Documents is served.

1.3. "Document" or "Documents" means any writing however recorded, including handwriting, typewriting, printing, photographing, photocopying, transmitting by electronic mail or facsimile, and every other means of recording upon any tangible thing, any form of communication or representation, including letters, words, pictures, sounds or symbols, or combinations thereof, and any record created thereby, regardless of the manner in which the record has been stored, and also specifically includes Electronically Stored Information and Hard-Copy Documents.

1.4. "Electronically Stored Information" or "ESI" means any Document or Documents stored or transmitted in electronic form.

1.5. "Hard-Copy Document" means any Document existing in paper form at the time of collection.

1.6.    "Native Format" means and refers to the format of ESI in which it was generated and/or used by the Producing Party in the usual course of its business and in its regularly conducted activities.  For example, the Native Format of an Excel workbook is a .xls or .xslx file.

1.7.    "Metadata" means the information associated with each Document that is identified in Attachment A (to the extent those fields are possible given the file type).

1.8.    "Optical Character Recognition" or "OCR" means the process of recognizing, and creating a file containing, visible text within an image.

1.9.    "Hash Value" is a unique numerical identifier that can be assigned to a file, a group of files, or a portion of a file, based on a standard mathematical algorithm applied to the characteristics of the text contained within the file or files.

1.10.    "Confidentiality Designation" means the legend affixed to Documents as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" and such other designation as defined by, and subject to, the terms of the Protective Order entered in this matter.

1.11.    "Searchable Text" means the text extracted or generated using OCR from any Document that allows the Document to be electronically searched.

1.12.    "Load Files" means electronic files provided with a production set of Documents and images used to load that production set into a Requesting Party's Document review platform.

1.13.    "Include" and "Including" means "include but not limited to" and "including, but not limited to".

## 2.    IDENTIFICATION OF RESPONSIVE DOCUMENTS

2.1.    The Producing Party may apply electronic searches in order to identify potentially responsive ESI.  The Parties agree to meet and confer on a search protocol for such searches, comprising (a) the custodians and/or sources of ESI that are to be searched; (b) the search terms

to be applied against those custodians and/or sources; (c) the date range to be applied against those custodians and/or sources; and (d) any other search criteria or methods to be used to identify potentially responsive ESI, including technologically assisted review ("TAR"). If the Parties fail to reach agreement as to the search protocol, either Party may bring the dispute to the Court for resolution. A Producing Party is not required to apply a search protocol to sources of ESI that are not reasonably likely to contain responsive ESI.

2.2.    The fact that the Parties agree to a search protocol shall not preclude a Producing Party from reviewing potentially responsive ESI that is returned by the search protocol in order to make final determinations as to the responsiveness of the ESI and the privilege and other protections applicable to the ESI.

2.3.    Where reasonable, a Producing Party may employ means other than the search protocol in order to identify responsive Documents or ESI.

## 3.    PROCESSING SPECIFICATIONS FOR ESI

3.1.    <u>De-Duplication</u>.  A Producing Party may remove Documents identified as duplicative based on MD5 or SHA-1 hash values of the full text of the Documents at the family level across custodians and sources.  The Producing Party shall produce a Metadata field for all produced Documents for which duplicate Documents were removed listing the Custodians that possessed a duplicate Document that was removed.  The Producing Party will update this field no later than 10 days following substantial completion of production.  The above shall not impose on a party any obligation to produce duplicative Documents.

3.2.    <u>E-mail Threading</u>.  The Parties are permitted to use commercially reasonable e-mail threading tools to remove e-mails and their attachments where the contents of the e-mail and its attachments are wholly included within another e-mail that is not removed.

3.3.    <u>De-NISTing</u>.  Non-user generated files may be removed from review and production using the list of non-user generated files maintained by the National Institute of Standards and Technology ("NIST").  Additional culling of system files based on file extension may include: WINNT, LOGS, DRVS, C++ Program File (c), C++ Builder 6 (cpp), Channel Definition Format (cdf), Creatures Object Sources (cos), Dictionary file (dic), Executable (exe), Hypertext Cascading Style Sheet (css), JavaScript Source Code (js), Label Pro Data File (IPD), Office Data File (NICK), Office Profile Settings (ops), Outlook Rules Wizard File (rwz), Scrap Object, System File (dll), temporary files (tmp), Windows Error Dump (dmp), Windows Media Player Skin Package (wmz), Windows NT/2000 Event View Log file (evt), Python Script files (.py, .pyc, .pud, .pyw), and Program Installers.

3.4.    <u>Embedded Objects</u>.  Files that are embedded in other files ("Embedded Objects"), including e-mail inline images and Microsoft Office embedded images, shall not be produced as separate files.  If it appears to the Requesting Party that content contained in an Embedded Object is not contained and/or visible within a parent Document, the Requesting Party may notify the Producing Party within 21 days of the close of document production and identify those Documents by Bates Number; if a Producing Party is timely notified, the Producing Party shall undertake reasonable efforts to extract Embedded Objects from the identified Documents as separate files and reproduce the identified Documents with the extracted Embedded Objects treated as attachments to the parent Document.

3.5.    <u>Searchable Text</u>.  Text will be extracted directly from the native electronic file of ESI unless the Document requires redaction, is an image file, or is any other native electronic file that does not contain text to extract (*e.g.*, non-searchable PDFs), in which case Searchable Text may be created using OCR.  Extracted text will include all comments, revisions, tracked changes,

speaker's notes and text from Documents with comments or tracked changes, and hidden worksheets, slides, columns, and rows. To the extent possible, extracted text from e-mails will include all header information that would be visible if the e-mail were viewed natively including: (a) the individuals to whom the communication was directed; (b) the author of the e-mail communication; (c) the individuals who were copied and blind copied on such e-mail; (d) the subject line of the e-mail; (e) the date and time of the e-mail; and (f) the names of any attachments.

      3.6.  <u>Exception Files</u>. The Parties will use commercially reasonable efforts to address Documents that present processing or production problems (including encrypted and/or protected files) ("Exception Files"). Exception Files that cannot be addressed through commercially reasonable efforts that are attached to produced Documents will be produced as a Bates-stamped placeholder TIFF bearing the legend, "This document was unable to be processed." Upon reasonable request, the Producing Party will undertake reasonable efforts to locate passwords for specifically identified Exception Files. If the Parties cannot reach agreement on the handling of Exception Files through the meet and confer process, the matter may be submitted to the Court for resolution.

## 4. PROCESSING SPECIFICATIONS FOR HARD-COPY DOCUMENTS

      4.1.  <u>General</u>. Hard-Copy Documents will be scanned as single-page TIFF images as they are kept in the ordinary course of business. The Producing Party will treat pages that are stapled or clipped together as a single document; otherwise the Producing Party will make reasonable efforts to identify what pages are logically part of the same document.

      4.2.  <u>Metadata</u>. For Hard-Copy Documents, the Producing Party shall, to the extent the information is reasonably available, provide metadata for each scanned document, including the:

(a) beginning production number (*i.e.*, the Bates number); (b) ending production number; (c) confidentiality designation; (d) custodian; and (e) page count.

4.3.   <u>Searchable Text</u>.  For Hard-Copy Documents, the Producing Party shall take reasonable steps to create Searchable Text using OCR.

## 5.   **PRODUCTION FORMAT**

5.1.   <u>General</u>.  Except as otherwise provided herein, the Parties will produce Documents in TIFF Format.  Spreadsheets (*e.g.*, Excel files) and audio and video files shall be produced in Native Format.  A Requesting Party may request the production of Native Files of other Documents (*e.g.*, images) where the production of the Native File is reasonably necessary to the Document's comprehension or use.

5.2.   <u>TIFF Format</u>.  All TIFFs produced by any party in this matter will be single page Group IV TIFF format with 300 dpi quality or better.  TIFF files will be named according to the corresponding Bates-numbered images.  To the extent possible, all Documents that contain comments, deletions and revision marks (including the identity of the person making the deletion or revision and the date and time thereof), speaker notes, or other user-entered data that the source application can display to the user will be processed such that all that data is visible in the image.  All TIFF images will be branded in the lower right-hand corner with its corresponding Bates number and in the lower left-hand corner with its Confidentiality Designation, if any, using a consistent font type and size.

5.3.   <u>Native Format</u>.  For Documents produced in Native Format, a Bates-stamped placeholder TIFF bearing the legend "This document has been produced in native format." shall also be produced in the same manner as other TIFFs.  Native Files shall have a file name that includes the Bates number and Confidentiality Designation.  Any Party printing the Native File

for use in this matter shall append and use the placeholder TIFF as a cover sheet to the Native File at all times.

5.4.    <u>Load Files</u>.  Productions will include image load files in Opticon format (.opt) and Concordance format data (.dat) files with reasonably available Metadata for all Documents.  All Metadata will be produced in UTF-7 or UTF-8 with Byte Order Mark format.

5.5.    <u>Text Files</u>.  A single document-level text file containing the Searchable Text shall be provided for each Document.  The text file name shall be the same as the Bates number of the first page of the Document with the Document extension ".txt" suffixed.  File names shall not have any special characters or embedded spaces.  Searchable Text shall be provided in UTF-8 or Western European (Windows) with Byte Order Mark format text.

5.6.    <u>Databases, Structured, Aggregated, or Application Data</u>.  For requests in which responsive information is contained in a database or other structured or aggregated data source or otherwise maintained by an application, the Parties will meet and confer to determine an appropriate format.  If the Parties cannot reach agreement, the matter may be submitted to the Court for resolution.

5.7.    <u>Redactions</u>.  Parties may redact information that is subject to the attorney-client privilege, work product protection, or any other protection from disclosure.  Parties may also redact information that is personally or commercially sensitive so long as that information is not responsive to any agreed requests for production.  Metadata will be provided for redacted Documents just as for other Documents, except that text within Metadata fields may be replaced with the word "Redacted" for any information that is subject to redaction.  Redacted Documents shall be identified as such in the Metadata.

5.8.     Color.  The Parties will produce TIFFs in black and white unless production in color is reasonably necessary to the Document's comprehension or use.  For Documents produced in color, the parties will produce JPG files.

5.9.     Parent-Child Relationships.  Parent-child relationships (the association between an attachment and its parent Document) will be preserved through the production of an appropriate Metadata field.

5.10.    Document Families.  A Document and all other Documents in its attachment range, e-mails with attachments, and files with extracted embedded Documents all constitute a family group.  Attachments that are wholly privileged may be excluded from production provided that a slipsheet with the placeholder "Document Withheld as Privileged" is produced.

5.11.    Production Media.  The Producing Party will use the appropriate electronic media (CD, DVD, secure FTP or other secure file transfer utility, hard drive, or other mutually agreeable media) for its production and will use high-capacity media to minimize associated overhead.  The Producing Party will label any physical media with the Producing Party, media volume name, and Document number range.

## 6.     PRIVILEGE LOG

6.1.     The Producing Party will provide the Requesting Party with a log of the Documents withheld for privilege containing information sufficient to enable the Requesting Party to evaluate the claims made, including the following information to the extent reasonably available:  Document Number, Custodian, Author/Sender, Recipient, CC Recipient, BCC Recipient, Date, Basis for Withholding (*e.g.*, Attorney-Client Communication), and Document Description.  The parties will exchange privilege logs no later than 21 days following substantial completion of document discovery and supplement that privilege log as necessary thereafter.

6.2.    A single Document containing multiple e-mails in an e-mail chain may be logged as a single entry.  A Document family (*e.g.*, e-mail and attachments) may be logged as a single entry so long as the log entry references the attachment(s), indicates the number of attachments, and accurately describes both the e-mail and its responsive attachment(s).

6.3.    A party is not required to log redacted Documents provided that it states the reason for the redaction in the text of the redaction box (*e.g.*, Privilege, Personally Sensitive, Commercially Sensitive).

6.4.    The Parties are not required to log privileged Documents created after the initiation of litigation in this matter that are drafted, sent to, or sent by litigation counsel (or other attorneys or support staff employed by the same firm as litigation counsel) in this matter or related matters.

## 7.    THIRD-PARTY DOCUMENTS AND ESI

7.1.    A Party that issues a subpoena upon any third party ("Issuing Party") shall include a copy of this ESI Protocol and any protective order agreed and/or entered in this litigation with the subpoena and state that the Parties in this litigation have requested that third parties produce documents in accordance with the specifications set forth herein.

7.2.    The Issuing Party shall request that third parties produce the same documents to all Parties simultaneously.  In the event that the third party fails to do so (as indicated by, among other means, failing to address both Parties in its production cover letter), the Issuing Party shall produce a copy to all other Parties of any documents and ESI (including any metadata) obtained under subpoena to a third party in the same form and format as produced by that third party within seven calendar days of receipt from the third party.

7.3.     If a third-party production is not Bates-stamped, the Issuing Party will endorse the non-Party production with unique Bates prefixes and numbering scheme prior to reproducing them to all other Parties.

## 8.     LIMITATIONS AND NON-WAIVER

8.1.     This ESI Protocol applies to Documents produced on or after the date this ESI Protocol is fully executed.

8.2.     This ESI Protocol does not waive a Party's privileges or immunities, except as specifically required herein, and any such waiver shall be strictly and narrowly construed and shall not extend to other matters or information not specifically described herein.

## 9.     GENERAL PROVISIONS

9.1.     Any practice or procedure set forth herein may be varied by agreement of the Parties, which will be confirmed in writing.

9.2.     A Party is not required to comply with any aspect of this ESI Protocol that is unreasonable or infeasible, provided that it informs the other party in writing at or before the time of production as to why compliance with the ESI Protocol is unreasonable or infeasible.

9.3.     The Parties will meet and confer to resolve any dispute regarding the application of this ESI Protocol before seeking Court intervention.

SO ORDERED:

Dated: May 22, 2020
New York, New York

NAOMI REICE BUCHWALD
United States District Judge

**ATTACHMENT A**

| Field | Definition | Doc Type |
|---|---|---|
| CUSTODIAN | Name of person from whom Documents/files were collected or, in the case of non-human sources, a short description of that source (*e.g.*, "Shared Drive"). | All |
| ALL_CUSTODIANS | The Custodian value of the Document as well as the Custodian value for all copies of the Document that were removed as a result of de-duplication. | All |
| BEGBATES | Beginning Bates Number (production number) | All |
| ENDBATES | Ending Bates Number (production number) | All |
| BEGATTACH | First Bates number of family range (*i.e.*, Bates number of the first page of the parent Document) | All |
| ENDATTACH | Last Bates number of family range (*i.e.*, Bates number of the last page of the last attachment or, if no attachments, the Document itself) | All |
| PAGE COUNT | Number of pages in the Document | All |
| APPLICATION | Commonly associated application for the specified file type | All |
| FOLDER | Folder location of the e-mail within the PST/OST | E-mail |
| PARENT DATE | Date of the Parent Document (mm/dd/yyyy hh:mm:ss AM) | E-Document |
| FROM | Sender | E-mail |
| TO | Recipient | E-mail |
| CC | Additional Recipients | E-mail |
| BCC | Blind Additional Recipients | E-mail |
| SUBJECT | Subject line of e-mail | E-mail |
| DATESENT | Date Sent (mm/dd/yyyy hh:mm:ss AM) | E-mail |
| DATERCVD | Date Received (mm/dd/yyyy hh:mm:ss AM) | E-mail |
| OUTLOOK TYPE | Type of Outlook item (*e.g.*, e-mail, calendar item, contact, note, task) | Outlook or similar system data |

| Field | Definition | Doc Type |
|---|---|---|
| HASHVALUE | Hash value (*e.g.*, MD5, SHA-1, or SHA-2) | All |
| FILENAME | Original file name at the point of collection | E-Document |
| TITLE | Internal Document property | E-Document |
| AUTHOR | Creator of a Document | E-Document |
| DATE CREATED | The Application Creation Date (mm/dd/yyyy hh:mm:ss AM) indicating when the file was born or created by an application. | E-Document |
| DOCUMENT TYPE | Descriptor for the type of Document: "E-Document" for electronic Documents not attached to e-mails; "E-mail" for all e-mails; "E-attachment" for files that were attachments to e-mails; and "Hard Copy" for Hard-Copy Documents | All |
| REDACTED | "Yes" for redacted Documents; "No" for un-redacted Documents | All |
| PRODVOL | Name of media that data was produced on | All |
| CONFIDENTIALITY | Confidentiality level if assigned pursuant to any applicable Protective Order or stipulation | All |
| TIMEZONE | Time zone of data used during processing of data | All |
| NATIVE FILE LINK | The file path for Documents provided in Native Format | All |
| TEXTPATH | File path for OCR or Extracted Text files | All |